UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE KUHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 10 C 7171 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| UNITED AIRLINES, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Christine Kuhn, an African American flight attendant for Defendant United Airlines ("United"), filed suit alleging that United retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Kuhn claims that after she filed a charge with the Equal Employment Opportunity Commission ("EEOC") in 2007 in which she alleged retaliation for internal complaints of age, sex, and race discrimination, United failed to fully and impartially investigate subsequent complaints she made of co-worker mistreatment. Before the Court is United's motion for summary judgment. Because Kuhn did not suffer from an adverse employment action, and even if she had, she could not establish causation under the direct method or identify a similarly situated employee under the indirect method, United's motion [126] is granted.

# BACKGROUND[1]

Kuhn has been a flight attendant with United since August 1, 1974, having attained the rank of purser, or lead flight attendant, over ten years ago. Kuhn is currently based out of Chicago's O'Hare International Airport. She has received the same base salary and benefits since 2007. By her own choice, she does not always serve as a purser on a flight, and thus her pay and certain perks that accompany being a purser vary depending on her role on each flight.

On April 23, 2007, Kuhn filed an EEOC charge against United, alleging retaliation based on internal complaints of age, sex, and race discrimination. United responded to the EEOC charge by submitting a position statement to the EEOC on May 25, 2007. Kuhn admits that she did not discuss her 2007 EEOC charge with anyone at United at the time. But certain individuals at United—Karen Kukla, Megan Detzner, Linda Glenn-Burroughs, Bob Jordan, Jennifer Coyne, Gail Korn, and Bill Thacker—were aware of the charge because they were involved in preparing United's response to the EEOC. Kuhn received a right to sue letter from the EEOC on January 31, 2008, but she did not file a lawsuit based on her 2007 EEOC charge.

On February 2, 2008, just two days after receiving the right to sue letter, Kuhn and another flight attendant, William Rosenblam, had a verbal altercation during a flight. According to Kuhn, on a flight from Hong Kong to Chicago, she asked Rosenblam to get a passenger a glass of water, to which Rosenblam responded "shut the fuck up" before getting the water. Kuhn then confronted Rosenblam by telling him to "shut up" and not use foul language with her again. Rosenblam claimed to have only said "shut up" but apologized later in the flight for any rude

---

[1] The facts set forth in this section are derived from United's statement of facts and Kuhn's response to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Kuhn, the non-movant. The Court has considered the parties' objections to the statement of facts, response, and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of the pending motion for summary judgment.

behavior. When they landed in Chicago, Kuhn nonetheless submitted a formal flight attendant report to her supervisor, Joe Mallia, to document Rosenblam's "lack of respect" and "uncalled for" use of "foul language," which she found "very offensive, rude, obnoxious and somewhat violent." Def.'s Tab C, Ex. 5. Although the flight attendant report does not state that Rosenblam treated Kuhn improperly because of her race or age, Kuhn testified that she told Mallia that Rosenblam treated her improperly because of her race before she wrote the report. After Kuhn made her report, Mallia spoke with Rosenblam, who denied using profanity. Mallia also contacted Rosenblam's supervisor, Linda Pellico, regarding the incident, and either Mallia or Pellico contacted United's Professional Standards department. Someone from that department also spoke with Rosenblam on two or three occasions. When Kuhn subsequently asked Mallia about the outcome of her report about Rosenblam, she was told that it was being handled. Kuhn has not flown with Rosenblam since the February 2, 2008 incident.

On July 19, 2009, Kuhn had another altercation with a different flight attendant, Michael Kimbel, while on a flight from Tokyo to Chicago. According to Kuhn, the two had issues working together on a previous flight, but their problems came to a head when Kimbel entered the galley where Kuhn was standing in front of the oven and forcefully pushed her against the oven. Kuhn told Kimbel that he could have made her aware that he was behind her, and Kimbel apologized. Kuhn filed an official report with her supervisor, Ron Clarke, claiming Kimbel's behavior constituted harassment and violence in the workplace. The report does not state that the harassment was based on race, age, or sex, and Kuhn did not complain along these lines to Clarke before writing her report. Nonetheless, she maintains that Kimbel treated her differently because of her race.

Upon receiving Kuhn's report, Clarke completed a Workplace Violence Incident Report, interviewed Kuhn and Kimbel separately, and asked them to complete written statements. Kimbel admitted to having bumped into Kuhn in the galley but claimed it was an accident. He stated that he apologized immediately. Kimbel also noted that Kuhn was extremely rude in response, calling him a "stupid fag." Def.'s Tab C, Ex. 9 at United00015. Kuhn also solicited statements from several other flight attendants who were on the same flight. After considering all the information he received, Clarke concluded that the contact between Kuhn and Kimbel was accidental. Kuhn has not worked with Kimbel since making her complaint.

On September 11, 2009, Kuhn had a third incident with two other flight attendants, Wai Le Bailey Tung and Tsz Kin Desmond Lam, on a flight from Chicago to Hong Kong. According to Kuhn, Tung and Lam committed a slowdown and work stoppage, which required Kuhn to work around them and perform extra work. Kuhn submitted a formal flight attendant report to Clarke, her supervisor at O'Hare, and Josephine Lau, a supervisor located in Hong Kong. The report did not complain about harassment or discrimination based on Kuhn's age, sex, or race. Lau investigated Kuhn's report. She collected statements from Tung and Lam, who both responded that they did not know the basis for Kuhn's allegations. Lau thus determined she could not come to a conclusion regarding Kuhn's complaint and the investigation came to an end.

The three supervisors to whom Kuhn reported her complaints, Clarke, Lau, and Mallia, were not aware of her 2007 EEOC charge at the time they received her complaints or were investigating them. Kuhn admits that she has no personal knowledge about whether they were aware of the 2007 EEOC charge.

On July 19, 2010, Kuhn filed another charge with the EEOC, alleging retaliation for engaging in protected activity in violation of Title VII and the ADEA. She claimed that her complaints of co-worker mistreatment were not fully and impartially investigated. On August 9, 2010, the EEOC sent Kuhn a Notice of Right to Sue letter. This lawsuit followed.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Compliance with Local Rule 56.1

Northern District of Illinois Local Rule 56.1 provides detailed instructions as to how litigants should prepare their summary judgment motions and responses. Pursuant to Local Rule

5

56.1, a party seeking summary judgment must submit a statement of undisputed material facts that support judgment in its favor as a matter of law. N.D. Ill. L.R. 56.1(a). The party opposing the motion must then submit a concise response to the movant's statement of material facts. N.D. Ill. L.R. 56.1(b)(3). That statement is to include a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" N.D. Ill. L.R. 56.1(b)(3)(B). In other words, the opposing party may not simply deny the facts presented by the moving party; it must instead cite "specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). In addition, the non-moving party has the ability to file its own statement of additional facts, to which the moving party must then respond. N.D. Ill. L.R. 56.1(a), (b)(3)(C).

Kuhn has only partially complied with Local Rule 56.1. As United points out in its reply, instead of supporting certain of her disputes with citations to specific evidentiary materials, she merely contests whether the evidence to which United cites has a proper foundation or is admissible. To the extent Kuhn's objections are without merit and her response leaves United's statements otherwise undisputed, the Court deems United's statements admitted. More importantly, however, Kuhn did not file a separate statement of additional facts as required by Local Rule 56.1(b)(3)(C), instead including additional facts in her memorandum in opposition to United's motion for summary judgment. These facts, however, are not properly before the Court. *See Hoosier v. Greenwood Hospitality Mgmt. LLC*, --- F. Supp. 2d ----, 2014 WL 1245112, at *2 (N.D. Ill. Mar. 26, 2014) ("The discussion of facts in a responsive memorandum is insufficient to put the issue before the court."). United has not had a chance to properly respond to Kuhn's additional facts, as required by Local Rule 56.1, and the Court is unable to

determine to what extent they are disputed. *Id.*; *see also FirstMerit Bank, N.A. v. Frasca*, No. 13 C 3, 2013 WL 6670819, at *1 (N.D. Ill. Dec. 17, 2013) ("Facts argued in briefs but not included in a party's statement of undisputed facts are not considered by the Court, because to do so would rob the other party of his or its opportunity to show such facts are disputed."). Thus, the only facts properly before the Court are those presented in United's Local Rule 56.1 statement of facts and Kuhn's response to that statement. Additional assertions made by Kuhn in her responsive memorandum and declaration are disregarded. *See also Gray v. Ghosh*, No. 12 C 194, 2013 WL 5497250, at *5 (N.D. Ill. Oct. 3, 2013) (collecting cases).

## II. Title VII and ADEA Retaliation Claims

Kuhn's only claims are that United retaliated against her in violation of Title VII and the ADEA. The analysis for retaliation claims is the same under both statutes. *See Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007); *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, --- F. Supp. 2d ----, 2014 WL 185978, at *17 n.7 (N.D. Ill. Jan. 15, 2014). Kuhn may proceed under either the direct or indirect method. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). Under the direct method, Kuhn must demonstrate that (1) she engaged in statutorily protected activity, (2) she was subject to an adverse employment action, and (3) there was a causal link between the protected activity and the employment action. *Id.* Under the indirect method, Kuhn must first demonstrate that (1) she engaged in a statutorily protected activity, (2) she was meeting United's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than a similarly situated employee who did not engage in the statutorily protected activity. *Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). Once a *prima facie* case is established, the burden shifts to United to offer a nondiscriminatory reason for the adverse action. *Id.* The burden then shifts back to Kuhn

7

to demonstrate that the proffered reason is pretextual. *Id.* United argues that Kuhn cannot establish her retaliation claims because she did not suffer the adverse employment action required under either method. Alternatively, United contends that Kuhn cannot show a causal connection under the direct method or a similarly situated employee under the indirect method. The Court must also address the scope of Kuhn's protected activity as the briefing demonstrates this to be in dispute.

### A. Protected Activity

The parties agree that Kuhn's 2007 EEOC charge constitutes protected activity. Additionally, Kuhn argues that her internal complaints dating back to 2005 and including those in February 2008, July 2009, and September 2009 constitute protected activity. Although an informal complaint may qualify as protected activity, it is only protected if it includes a complaint of discrimination based on a protected class or sufficient facts to raise that inference. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("[T]he complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." (citation omitted)). The Court does not have evidence properly before it regarding Kuhn's complaints prior to her 2007 EEOC charge. As to the three other complaints in February 2008, July 2009, and September 2009, Kuhn did not mention race or age as a basis for the alleged harassment in those written complaints. She claims to have told Mallia that Rosenblam's actions were motivated by race before writing her formal complaint in February 2008, but she admits that she did not inform Clarke or Lau of any such basis prior to an investigation being conducted into the July and September 2009 complaints. Thus, arguably, the February 2008

8

complaint could serve as additional protected activity for her Title VII retaliation claim. But United argues that Kuhn cannot rely on the February 2008 complaint for it was not mentioned as protected activity in the Second Amended Complaint. The Court need not decide the issue because Kuhn's claims fail on other grounds as discussed below. The Court will nonetheless analyze Kuhn's Title VII claim as if it is based on retaliation for both the filing of the 2007 EEOC charge and her February 2008 complaint against Rosenblam.

### B. Adverse Employment Action

Under both the direct and indirect method, Kuhn must show that she suffered an adverse employment action. *Majors*, 714 F.3d at 537. "The showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). But "petty slights or minor annoyances that often take place at work and that all employees experience" do not qualify as adverse employment actions; the action must be materially adverse. *Burlington N.*, 548 U.S. at 68. The determination of whether an action qualifies as materially adverse is fact dependent. *Id.* at 69 ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.").

Kuhn does not claim to have been subjected to the usual list of standard adverse employment actions—being fired or demoted, losing salary or benefits, or otherwise having her responsibilities decreased as a result of her 2007 EEOC charge or her February 2008 complaint. Instead, she claims that United failed to fully and impartially investigate her multiple complaints

9

of co-worker mistreatment. The Seventh Circuit has not specifically addressed whether this qualifies as an adverse employment action. But the Second and Tenth Circuits have held that failure to investigate a complaint, where the protected activity at issue is the making of the same complaint, does not constitute an adverse action. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640–41 (10th Cir. 2012); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). This is because "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed." *Daniels*, 701 F.3d at 640; *Fincher*, 604 F.3d at 721 ("An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint: Her situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all.").

The Second Circuit left open the possibility, however, that a failure to investigate could constitute an adverse employment action if the failure was in retaliation for a separate protected act. *Fincher*, 604 F.3d at 722. This was perhaps in recognition of the D.C. Circuit's finding several years earlier that the FBI's failure to investigate a potential death threat against an employee, which followed the employee's discrimination complaint, could constitute an adverse employment action. *Rochon v. Gonzales*, 438 F.3d 1211, 1219–20 (D.C. Cir. 2006) ("[A] reasonable FBI agent well might be dissuaded from engaging in activity protected by Title VII if he knew that doing so would leave him unprotected by the FBI in the face of threats against him or his family."); *see also Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 349 (6th Cir. 2008) (failure to investigate complaint of co-worker's act of setting plaintiff's car on fire for reporting him for harassment could be found to be an adverse employment action); *Campbell v. Donahoe*,

No. 2008-130, 2013 WL 450644, at *9 (D.V.I. Feb. 6, 2013) ("An employer's failure to address a threat by one employee to another might reasonably dissuade the threatened employee from making or supporting a charge of discrimination." (citing *Rochon*, 438 F.3d at 1219)).

Based on the above, there is no question that the failure to adequately investigate the February 2008 complaint was not a materially adverse action with respect to the making of that complaint. *See Clemmer v. Office of Chief Judge of Circuit Court of Cook County and State of Ill.*, No. 06 C 3361, 2008 WL 5100859, at *15 (N.D. Ill. Dec. 2, 2008) ("Clemmer may have preferred her employer to do more in its investigation, but its failure to conduct an inquiry to her satisfaction does not constitute an adverse action."); *Johnson v. ITT Corp.*, No. 1:10-CV-142, 2011 WL 3875598, at *8 (N.D. Ind. Sept. 1, 2011) (failure of employer to launch investigation into plaintiff's complaint not an adverse employment action as it was not a "quantitative or qualitative change in the terms or conditions of his employment" (citation omitted) (internal quotation marks omitted)). But the Court must also address the question *Fincher* left open, whether the failure to adequately investigate a complaint unrelated to the protected activity constitutes an adverse employment action. *Rochon* suggests that a failure to investigate could, under appropriate circumstances, qualify as an adverse employment action, but *Rochon*'s holding is not an absolute and must be considered in the context in which it arose. *Burlington N.*, 548 U.S. at 69 ("Context matters."); *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) ("Of course death threats are extreme, but we think the *Rochon* principle may be generalized . . . ."). At a basic level and "[s]tated in a form most favorable to plaintiff, a claim of discriminatory or retaliatory failure to remediate may be sufficient if the uncorrected action would (if it were discriminatory or retaliatory) be of enough significance to qualify as an adverse action (under the relevant standard)." *Baird*, 662 F.3d at 1249. *Rochon* involved an egregious situation, where an

11

employer failed to investigate a potential threat in a life-or-death situation, which, if tied to the making of the employee's prior complaint, would clearly dissuade a reasonable employee from making similar complaints in the future. *Rochon*, 438 F.3d at 1219–20. In *Hawkins*, the company failed to investigate allegations involving a co-worker setting fire to the plaintiff's car, which a reasonable employee would also find egregious as the reported action caused serious property damage. *Hawkins*, 517 F.3d at 348–49. Here, however, United allegedly failed to fully investigate what can be deemed run-of-the-mill harassment or mistreatment complaints, not threats like those in *Rochon* or *Hawkins*. *See Clemmer*, 2008 WL 5100859, at *14–15 ("[T]he egregiousness of the offense in *Rochon* is what led the D.C. Circuit to hold that the action could be an adverse action."); *Baird v. Gotbaum*, 888 F. Supp. 2d 63, 76–77 (D.D.C. 2012) (distinguishing *Rochon* based on the fact that, in *Baird*, the "unremediated conduct" was "far less significant" than in *Rochon*, amounting merely to "ordinary workplace tribulations"); *see also Carroll v. Lynch*, No. 07 C 1575, 2012 WL 73195, at *7 (N.D. Ill. Jan. 10, 2012) (defendant's "failure to thoroughly investigate unanswered phone calls does not constitute an adverse employment action, and is instead the sort of minor workplace dispute that 'do[es] not justify trundling out the heavy artillery of federal antidiscrimination law'" (alteration in original) (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002)). Moreover, unlike in *Rochon*, some investigation into Kuhn's complaints occurred. *See Clemmer*, 2008 WL 5100859, at *15 (noting that plaintiff was not "denied any investigation whatsoever"); *Baird*, 888 F. Supp. 2d at 77 (further distinguishing *Rochon* by noting that employer had taken steps to address some of plaintiff's complaints). Under the circumstances here, the allegedly insufficient investigation does not rise to the level of a materially adverse action.[2] Thus, summary judgment must be granted for United on this basis alone.

---

[2] Although the standard for determining whether an action is materially adverse is objective, *Burlington*

C. **Causation**

Even assuming that the failure to conduct a full and impartial investigation constituted an adverse employment action, Kuhn's claims would fail under the direct method for lack of causation. The Supreme Court recently held that a plaintiff must establish but-for causation for Title VII retaliation claims, bringing the standard of causation in line with that required for Kuhn's ADEA claim. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ----, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) (but-for causation required for ADEA claims). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. at 2533.

For there to be a causal connection between protected activity and an adverse employment action, the employer must have been aware of the protected activity. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("The key inquiry in determining whether there is a causal connection under the direct method is whether Patterson was aware of the allegations of discrimination at the time of her decisions [to take adverse action]; absent such knowledge, there can be no causal link between the two."). "It is not sufficient that [the supervisors] *could* or even *should* have known about [Kuhn's] complaints; [they] must have had actual knowledge of the complaints for [their] decisions to be retaliatory." *Id.*; *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) ("[A]n employer cannot retaliate when

---

*N.*, 548 U.S. at 68, the Court also notes that Kuhn's argument that the failure to investigate constitutes an adverse action is somewhat ironic, as her actions make clear that she was not deterred by the lack of investigation, instead checking in on the status of the investigations and continuing to openly articulate what she perceived as discriminatory treatment despite the alleged lack of investigation. *Milne v. Navigant Consulting*, No. 08 Civ. 8964(NRB), 2010 WL 4456853, at *8 & n.16 (S.D.N.Y. Oct. 27, 2010); *see also Williams v. Columbia Univ.*, No. 11 Civ. 8621(WHP), 2012 WL 3879895, at *3 (S.D.N.Y. Aug. 28, 2012) ("[T]he fact that Williams lodged multiple complaints over an extended period of time suggests that Columbia's failure to investigate would not have deterred a reasonable person in her position.").

13

it is unaware of any complaints."). However, the undisputed evidence demonstrates that none of the supervisors involved in allegedly failing to properly investigate Kuhn's complaints were aware of her 2007 EEOC charge. Nor is there any evidence properly before the Court that Clarke or Lau, who investigated her July and September 2009 complaints, were aware that she had made a complaint in February 2008 regarding Rosenblam's conduct. Kuhn's mere speculation about her supervisors' awareness is not sufficient to survive summary judgment. *See Bass v. Joliet Public Sch. Dist. No. 86*, --- F.3d ----, 2014 WL 1229578, at *4 (7th Cir. 2014) ("Speculation is no substitute for evidence at the summary judgment stage."); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *13 (N.D. Ill. Mar. 13, 2014) (plaintiff did not present any evidence that supervisors were aware of protected activity and speculation about their state of mind was not admissible to resist summary judgment). Thus, Kuhn's retaliation claims also fail under the direct method because she could not establish the required causal connection.

### D. Similarly Situated Employees

Assuming that the failure to investigate constitutes an adverse employment action, Kuhn's claims also fail under the indirect method because she has not presented sufficient evidence that she was treated less favorably than a similarly situated employee who did not engage in protected activity. "A similarly situated employee need not be in a situation identical to that of the plaintiff." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012). But Kuhn must proffer a comparator who dealt with the same supervisor, was subject to the same standards, and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)). Kuhn argues in her

response to United's motion that she "is aware of approximately twenty other Pursers who did not engage in protected activity as she did and who were not subject to the adverse employment actions she suffered in the workplace." Doc. 141 at 14–15. Although she cites to her declaration, in which she lists the names of individuals who allegedly held her job title, did not make an EEOC charge, and were not subjected to a hostile work environment, the Court has previously concluded that her declaration is not properly before it.

Moreover, even were the Court to consider Kuhn's declaration, it is insufficient to carry her burden of demonstrating that the twenty individuals were similarly situated. *See Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003) (noting that it is plaintiff's, not defendant's, burden to prove that the defendant treated similarly situated employees more favorably). Kuhn has not provided any details that would allow the Court to determine whether these individuals are indeed similarly situated or were treated better than she. *See Gates*, 513 F.3d at 690–91 (plaintiff's limited information on comparators was "too vague to allow this Court to determine whether Gates and the men are 'similarly situated'"); *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 753 (7th Cir. 2007) (plaintiff failed to identify similarly situated employees for even though he identified individuals with the same employment responsibilities and supervisor, he did not present information as to other "salient characteristics" that would allow a trier of fact to determine that they were treated differently by the employer). Thus, without a similarly situated employee, Kuhn cannot establish a *prima facie* case of retaliation and her claims fail under the indirect method for this reason as well.

## CONCLUSION

For the foregoing reasons, United's motion for summary judgment [126] is granted. This case is terminated.

15

Dated: August 6, 2014

                                                                                       
SARA L. ELLIS
United States District Judge